**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **DANIEL ALEJANDRO ALANIS** | § | |
| **Plaintiff** | § | |
| **VS** | § | **C.A. NO. 1-16-CV-00190** |
| | § | |
| **CITY OF BROWNSIVLLE AND** | § | |
| **ANTONIO MARTINEZ,** | § | |
| **Defendants** | § | |

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL ALEJANDRO ALANIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | C.A. No. 1:16-CV-00190 |
| | § | JURY DEMAND |
| CITY OF BROWNSVILLE and | § | |
| ANTONIO MARTINEZ, | § | |
| | § | |
| *Defendants*. | § | |

## DECLARATION OF ANTONIO MARTINEZ

1. My name is Antonio Martinez. I am a defendant in the above entitled lawsuit. I have personal knowledge of all of the facts stated in this declaration, and all such facts are true and correct.

2. I served as a detention officer for the City of Brownsville from August 2011 until August 2015.

3. Upon being hired as a jailer, I was given, among other things, the Brownsville Police Department Policy Manual. Through my review of the Manual and through verbal instruction given to me by my supervisors in the jail, I was aware of the departmental policy that detention officers like myself were authorized to use only the force that appeared reasonably necessary to effectively bring an incident under control while protecting the lives of the officer and another. Early in my employment, the City provided a 40-hour in house jailer training course which I took, called the Basic County Corrections Course. That course was taught by Dionicio Cortez, the jail training officer for Cameron County. I completed the course and scored above 80 on the final examination. In that course, I received a full day, approximately 6 hour instruction on the use of force and defensive tactics. In addition, in early 2012, I took an in house course that covered use-of-force subjects, entitled Mental Health Awareness & Use of Force Training for Jailers, which included specific instruction on legal aspects of use of force and detailed instructions on the BPD Section 10, Use of Force policy.

4. The entrance from the sally port into the jail facility is controlled by double locking doors, an external door opening to the outside, and an internal door, opening into the jail. Between the doors is a small space where officers entering the jail can disarm themselves and store their weapons. Within a few feet from the inside of the interior door is the doorway of Cell 114, the only padded cell in the jail. As one walks into the jail facility through the interior sally port door, the door to Cell 114 is on the left side. It was never my understanding that the padded cell was intended to be used, or ever in fact used for the purpose of punishing inmates by slamming them into floor or walls. I am not aware of any jailer ever using Cell 114 for that purpose, and I have never used it for that purpose.

5. The walls and flooring of Cell 114 was padded with a foam rubber fill, which was harder than a pillow but softer than concrete. The purpose of the padded cell was to protect disruptive inmates from hurting themselves by hitting or kicking the metal bars of the regular jail cells. I understand that if one were to strike the padded wall with a clenched fist hard enough, it could hurt one's hand. But the padding is

intended to absorb the shock of a hard blow, and I have never known of anyone, other than Alanis, to allegedly sustain an injury from hitting the wall that required medical attention.

6. My actions in question in this case were carried out by me in my capacity as a paid detention officer for the City of Brownsville. On February 20, 2015, shortly before Alanis arrived at the jail, I was informed by Detention Officer Alvear that a combative inmate was coming in. The fact that the inmate had been combative with the arresting officers indicated that he could be of a violent nature and would continue to be combative in the jail. I immediately made my way to the sally port entrance and waited in the driveway. The vehicle transporting Alanis arrived. An officer opened the right passenger side of the vehicle and requested Alanis to step out. Initially, Alanis was uncooperative. He and the officer crossed words. Alanis exited the vehicle and was escorted toward me. He appeared angry. As one of the officers delivered custody of him to me, and I took hold of his left shoulder, Alanis twisted his body, jerking away from me, and began mouthing loudly at the officers following behind in the driveway. The interior door into the jail cell was closing, so in order maintain control of the situation, I placed my left arm around him, drew him close to my body so the exterior door did not close on his face. I lifted him slightly from the ground, and carried him into the jail facility through the interior door. Inside of the jail facility, I placed Alanis back firmly on his feet, while continuing to maintain a hold on him from the side and slightly behind him. I did not release him because he was pulling away from me and I had not yet searched him for weapons. I walked with him, still struggling, into the door of Cell 114. The doorway is very narrow, only a few feet wide. He was walking, one foot in front of the other. As we were entering the cell door, he continued struggling against my hold, and his feet spread out. We had a slight collision and our legs entangled in the narrow doorway. Somehow, we both lost our balance, and, by accident and not intentionally on my part, we both fell against that padded wall. I knew and had been taught in my training not to maliciously and intentionally use unreasonable force to injure an inmate, and, based on that training, I agreed in my deposition, at pages 103 and 104, that it would have been improper in that situation for me to have intentionally slammed Alanis against the wall. However, the leg injury Alanis claims to have sustained in during our collision with the wall was accidental, due to the two of us losing our balance and falling against the wall; I did not intentionally slam him into the wall.

7. Once on the ground, I secured Alanis in a prone position so he could be searched for weapons and shackled.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the __15__ day of the October 2017.

Antonio Martinez

2